CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
5/13/2020
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 5:05-cr-00029 |
| | ) | |
| | ) | By: Michael F. Urbanski |
| TIMOTHY CLAY AREY, | ) | |
| Defendant | ) | Chief United States District Judge |

**MEMORANDUM OPINION**

This matter comes before the court on defendant Timothy Clay Arey's motion for compassionate release, ECF No. 208.[1] The government has responded, ECF Nos. 218 and 225, and Arey has replied, ECF No. 226. For the reasons stated herein, the court will **GRANT in part** Arey's motion for compassionate release and reduce his sentence by roughly 42 years and **DENY in part** Arey's motion as it pertains to his immediate release from custody.[2]

**I.**

On October 7, 2004, law enforcement officers executed a search warrant on Arey's home and found $7,000 in cash, digital scales, methamphetamine, twenty-seven firearms, ammunition, and an RF detector. ECF No. 225, at 1. Additionally, officers discovered a fanny pack containing more methamphetamine, over $400 in cash, and a loaded pistol on Arey. Id. At the time of his arrest, Arey was 47 years old and his prior criminal record consisted of possession of less than a half-ounce of marijuana, possession of a concealed firearm while

---

[1] Arey also filed Notices of Supplemental Authority in Support of Motion for Compassionate Release, ECF Nos. 221, 222, 223, 224, 227, and 228, and a Supplemental Memorandum in Support, ECF No. 229.
[2] While the court is granting Arey's motion and reducing his sentence, the court notes that Arey still faces a total sentence of 390 months, and has over 18 years remaining.

1

possessing that marijuana, two misdemeanor assault and battery convictions, and a misdemeanor trespass charge. ECF No. 208, at 2.

At trial, several witnesses testified to seeing Arey with a gun on different occasions and his ex-wife testified that he had a device holding a handgun mounted under his kitchen table "in the event a business deal went wrong." ECF No. 218, at 1-2. Arey testified to his personal methamphetamine habit but denied any large-scale drug distribution conspiracy. Id. at 2.

On March 17, 2006, a jury found Arey guilty of conspiracy to distribute 500 grams or more of methamphetamine and possession with intent to distribute methamphetamine, as well as three counts of possession of a firearm in furtherance of drug trafficking and two counts of possession of a firearm after being convicted of a misdemeanor crime of domestic violence. Id. at 1. Later, at sentencing, the court found Arey was responsible for handling nine kilograms of methamphetamine over a six-year period and that he had perjured himself at trial when he denied his drug distribution scheme. Id. at 2. He originally was sentenced to a total of 952 months, which later was reduced to 895 months pursuant to 18 U.S.C. § 3582(c)(2) on June 24, 2015. ECF No. 205. Approximately 20 years of Arey's sentence is for his drug-related offense, while the remaining 55 years are due to three "stacked" § 924(c) offenses for possession of firearms. ECF No. 208, at 1.

Arey is now 61 years old and has served more than 14 years of his sentence. Id. at 2. In that time, he has completed a number of classes as part of the Release Preparation Program. Id. He has successfully completed his drug education requirements, taken numerous other classes, and maintained a consistent work history while incarcerated. Id. at 2-3. On December 5, 2019, Arey filed his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), citing

2

a combination of his "age, health conditions, and unduly harsh stacked § 924(c) convictions" as extraordinary and compelling reasons justifying his release. Id. at 1. Additionally, Arey has filed supplemental authority suggesting that the court should also consider the recent COVID-19 pandemic in its § 3582(c)(1)(A) analysis. See ECF Nos. 221, 222, 223, 224, 227, and 228. This matter is ripe for disposition.[3]

## II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), was amended by the First Step Act on December 21, 2018 (the "FSA"). Previously, a defendant was only eligible for compassionate release based on extraordinary and compelling reasons upon a motion by the Director of the Bureau of Prisons ("BOP"). Now, however, the statute allows a court to reduce a sentence upon motion by the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request . . . whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). "[A]fter considering the factors set forth in section 3553(a), to the extent that they are applicable," a court may then reduce a sentence "if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id.

Arey's requested relief requires the court to consider: (1) if Arey exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence and if such a reduction is consistent with applicable policy

---

[3] The court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

statements of the United States Sentencing Commission (the "Sentencing Commission"); and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

    i.    <u>Arey has exhausted available administrative remedies.</u>

Arey first requested a reduction-in-sentence from the BOP on August 28, 2019. He did not receive a response within 30 days and subsequently filed this motion for compassionate release on December 5, 2019.[4] Initially, it appeared that the parties agreed that Arey had exhausted his administrative remedies in accordance with § 3582(c)(1)(A).

However, in a supplementary filing on March 14, 2020, Arey argues that the COVID-19 pandemic should be considered in addition to the other extraordinary and compelling reasons. In response, the government asserts that Arey has not exhausted his administrative remedies because he did not present COVID-19 as a reason for release to the BOP in his August 28 request. Arey's counter-argument is two-fold. First, Arey contends that he has presented enough evidence of extraordinary and compelling reasons justifying compassionate release without consideration of the global pandemic. Second, he maintains that it is nevertheless entirely appropriate for the court to consider evolving societal events and public health conditions.

In support of his argument that it is appropriate for the court to consider evolving societal events and public health conditions, Arey cites two recent cases from within the Fourth Circuit in which a district court considered supplemental filings with updated information not present at the time of the administrative request for compassionate release.

---

[4] The BOP responded and formally denied his request on January 14, 2020. <u>See</u> ECF No. 216-1.

4

See United States v. Edwards, No. 6:17-CR-00003, 2020 WL 1650406, at *9-10 (W.D. Va. Apr. 2, 2020) ("To be sure, Defendant presented a strong case for compassionate release on account of his incurable brain cancer even before the outbreak of the COVID-19 pandemic. But Defendant's request was further substantiated with a particularized showing that he is susceptible to contracting COVID-19 . . . ."); United States v. Beck, 475 F. Supp. 3d 573 (M.D.N.C. June 28, 2019) (considering information and events that occurred after the December 2018 request for compassionate release, including the growth of new lumps in defendant's right breast in January of 2019, a PET scan in March of 2019, and appointments with oncologists in April and May of 2019).

The court agrees with Arey's argument that in this case, to the extent that the evolving circumstances affect his previously filed motion for compassionate release, the court will consider the COVID-19 pandemic in its analysis below. Accordingly, the court finds that Arey has exhausted the BOP compassionate release process as required by § 3582(c)(1)(A) and may properly bring this motion.[5]

 ii. <u>Arey presents extraordinary and compelling reasons to warrant a sentence reduction and such a reduction is consistent with applicable policy statements.</u>

Pursuant to 28 U.S.C. § 994(t), the Sentencing Commission is responsible for defining "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The U.S. Sentencing Guidelines Manual ("USSG"), produced by the Sentencing Commission, published the following Policy Statement:

---

[5] The court notes that it would have granted Arey's motion regardless of the COVID-19 outbreak. However, as in Edwards, Arey's "request [is] further substantiated with a particularized showing that he is susceptible to contracting COVID-19." See Edwards, 2020 WL 1650406, at *9-10 (W.D. Va. Apr. 2, 2020).

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
>> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>> (3) The reduction is consistent with this policy statement.

USSG § 1B1.13.

The Sentencing Commission further published Application Notes for the Policy Statement, providing four ways for a defendant to prove that extraordinary and compelling reasons exist justifying compassionate release. USSG § 1B1.13, cmt. n. 1(A) – (D). The Application Notes state that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the BOP, for "other reasons" other than, or in combination with, the reasons described in Application Notes (A)-(C). Id.

The government argues that Arey does not satisfy the requirements for release based on health, age, or caregiver-related reasons. The court agrees. First, while he suffers from atrial fibrillation, perpetual neuropathy, and degenerative joint disease in both knees, he has not established that such medical conditions rise to the level of an extraordinary and compelling reason. Second, he is 61 years old and has served less than 15 years of his almost 75-year sentence. Finally, Arey makes no argument that his family circumstances rise to the level of extraordinary and compelling reasons warranting his release. With respect to the "other reasons" of Application Note D, the government argues that Arey also fails because the BOP has not moved for his release. Here, the court disagrees.

The court finds that the Policy Statement, written before the FSA passed, is inconsistent with the FSA.[6] See United States v. Decator, No. 95-020, 2020 WL 1676219, at *2 (D. Md. Apr. 6, 2020). First, the Policy Statement provides that "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." See § 1B1.13. However, in the FSA, Congress removed the requirement that the BOP initiate the motion for compassionate release. See First Step Act § 603(b); United States v. Beck, 425 F. Supp. 3d at 587 ("the terms of the First Step Act give courts independent authority to grant motions for compassionate release and say nothing about deference to [BOP], thus establishing that Congress wants courts to take a de novo look at compassionate release motions."). Because the Policy Statement is inconsistent with the

---

[6] The USSG § 1B1.13 has not been updated to reflect the passage of the FSA. See United States v. Maumau, No. 2:08-cr-758, 2020 WL 806121, at *1 (D. Utah Feb. 18, 2020). Indeed, the "Sentencing Commission's policies are unlikely to be updated any time soon because there are currently an insufficient number of appointed commissioners." Id. at *1, n.3.

7

FSA with respect to requiring the BOP to initiate the motion for compassionate release, many district courts, including courts in this circuit, have "thus reasoned that the catch-all provision's limitation of 'other' 'extraordinary and compelling reasons' to those defined by the BOP is similarly inconsistent with the First Step Act." See Decator, 2020 WL 1676219, at *2; see also United States v. Redd, ___ F. Supp. 3d ___ 2020 WL 1248493, at *8, n.18 (E.D. Va. Mar. 16, 2020) (collecting cases).

Specifically, the Redd court found:

> Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance, particularly since it would be unlikely that the BOP Director would determine that an extraordinary and compelling reason exists under Application Note 1(D) but then decline to file a motion for compassionate release based on that determination.

2020 WL 1248493, at *7; see also Decator, 2020 WL 1676291, at *2; United States v. Young, No. 2:00-cr-2, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020); United States v. Haynes, No. 93-cr-1043, 2020 WL 1941478, at *13 (E.D.N.Y. Apr. 22, 2020) ("The title of the First Step Act section that amends 18 U.S.C. § 3582(c)(1)(A) . . . is "Increasing the Use and Transparency of Compassionate Release." . . . That title supports the reading that U.S.S.G § 1B1.13 cmt. n.1(D) is not applicable when a defendant requests relief under § 3582(c)(1)(A) as amended because it no longer explains an appropriate use of that statute.") (quoting United States v. Cantu-Rivera, 423 F. Supp. 3d 345, 350 (S.D. Tex. 2019)).

The court agrees. The court finds that "[w]hile Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a

8

sentence."[7] Decator, 2020 WL 1676291, at *2; see also Redd, 2020 WL 1248493, at *7; Beck, 425 F. Supp. 3d at 579 ("There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act . . . While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."); United States v. Urkevich, 8:03-cr-37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) ("Other courts have concluded that the Commission's failure to amend Guideline § 1B1.13 and related Commentary following the First Step Act does not preclude a court from acting on motions for sentence reductions or using the catch-all provision in Application Note 1(D)."); Cantu-Rivera, 423 F. Supp. 3d at 350 ("the correct interpretation of § 3582(c)(1)(A)—based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements at any time—is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.").

Arey makes two arguments that extraordinary and compelling reasons support a sentence reduction in his case. First, Arey argues that while he does not independently meet the requirements of Application Notes (A) – (C), taking his age, health, rehabilitation, and the fundamental change to § 924(c) sentencing together creates extraordinary and compelling

---

[7] The government argues that the court does not have this discretion because the Policy Statement is binding on the court. The government relies exclusively on Dillon v. United States, 560 U.S. 817 (2010). However, Dillon involved an interpretation of § 3582(c)(2), and the Fourth Circuit has found that "the strictures of § 3582(c)(2) are irrelevant to" motions brought under the First Step Act. See United States v. Chambers, ___ F.3d ___ 2020 WL 1949249, at *5 (4th Cir. Apr. 23, 2020) (citing United States v. Wirsing, 943 F.3d 175, 183–85 (4th Cir. 2019)).

9

reasons to justify his release under § 3582(c)(1)(A). Second, Arey argues that combined with his previous argument, the COVID-19 pandemic helps create extraordinary and compelling reasons warranting his release.

        a. <u>The dramatic change to § 924(c) sentences constitutes an extraordinary and compelling reason.</u>

Arey's main reason for seeking compassionate release is Congress' dramatic reduction under the First Step Act of the penalties now imposed on "stacked" § 924(c) convictions. When Arey was sentenced, if multiple § 924(c) counts were charged in the same indictment, the first § 924(c) conviction carried a mandatory, five-year consecutive sentence, and each additional § 924(c) conviction added another 25 years. Arey was convicted of three § 924(c) violations and thus was sentenced to mandatory 55-year sentence to run consecutive to his drug sentence.

The First Step Act amended 18 U.S.C. § 924(c) to eliminate the practice of "stacking." <u>See</u> First Step Act § 403(a). Now, the enhanced mandatory minimum penalty for a second or any subsequent § 924(c) conviction applies only when an offender's first conviction under § 924(c) was "final" when the subsequent violation was committed. Conviction under the amended § 924(c) for an offender such as Arey who did not have a "final" § 924(c) conviction, would now result in a consecutive sentence of 15 rather than 55 years.

While the First Step Act § 403(a) did not make this change retroactive,[8] many district courts have reasoned that "the First Step Act's change in how sentences should be calculated

---

[8] As the <u>Maumau</u> court found, "[i]t is not unreasonable for Congress to conclude that not all defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis." 2020 WL 806121, at *7 (emphasis in original); <u>accord</u> <u>Urkevich</u>, 2019 WL 6037391, at *1, 4.

10

when multiple § 924(c) charges are included in the same indictment constitutes an extraordinary and compelling reason under" § 3582(c)(1)(A). United States v. Bryant, No. 95-cr-202, 2020 WL 2085471, at *3 (D. Md. Apr. 30, 2020); see also Decator, 2020 WL 1676219, at *3; Redd, 2020 WL 1248493, at *6; Young, 2020 WL 1047815, at *8 ("The court finds that the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)"); Maumau, 2020 WL 806121, at *7 (finding "that the changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief on the facts present here."); Haynes, 2020 WL 1941478, at *15 (finding "that the FSA's elimination of the § 924(c) sentencing weaponry that prosecutors employed to require [a "stacked" § 924(c) sentence] is an extraordinary and compelling circumstance warranting relief under § 3582(c)"). The court finds the reasoning of these cases persuasive. The fact that if Arey were sentenced today for the same conduct he would likely receive a dramatically lower sentence than the one he is currently serving constitutes an "extraordinary and compelling" reason justifying potential sentence reduction under § 3582(c)(1)(A). See Decator, 2020 WL 1676219, at *3; Redd, 2020 WL 1248493, at *5 ("[i]n assessing whether [defendant] has presented extraordinary and compelling reasons, the Court has initially and centrally considered the sentence he received relative to the sentence he would now receive for the same offense, whether and to what extent there is a disparity between the two sentences, and why that disparity exists."); Haynes, 2020 WL 1941478, at *15 ("For an individual like [defendant], with three pre-amended § 924(c) counts in a single indictment, the change spells the difference between thirty years in or out of prison.").

11

Arey originally was sentenced to 952 months, later reduced to 895 months, comprised of 235 months for his drug offenses followed by 660 months to be served for the "stacked" § 924(c) offenses. Today, based on Congress' acts to eliminate the "stacking" element of § 924(c), Arey would be subject to a total sentence of 390 – 440 months, comprised of 210 – 260 months for the drug offenses followed by 180 months for the § 924(c) convictions. Even at the high end of the guidelines, that is a reduction of almost 38 years from his reduced original sentence. Accordingly, pursuant to its independent discretion, the court finds that Arey's continued incarceration under a sentencing scheme that has since been substantially amended is a permissible "extraordinary and compelling" reason to consider a reduction in Arey's sentence.

      b. <u>The COVID-19 pandemic does not by itself constitute an extraordinary and compelling reason.</u>

Arey also argues that the ongoing COVID-19 pandemic, when considered along with his age, health, and the harshness of his § 924(c) sentences, presents another extraordinary and compelling reason for his release. See <u>United States v. Edwards</u>, No. 6:17-CR-00003, 2020 WL 1650406 (W.D. Va. Apr. 2, 2020). In <u>Edwards</u>, the defendant was suffering from terminal brain cancer with an estimated three to six months to live. <u>Id.</u> at *1. Moreover, he was immunocompromised because of past chemotherapy treatments. <u>Id.</u> at *4. Arey argues that in <u>Edwards</u> the court considered supplemental authority regarding COVID-19 in his § 3582(c)(1)(A) analysis. While Arey is correct, the court also concluded that the defendant's reasons for compassionate release were strong without consideration of the COVID-19 pandemic. See <u>id.</u> at *5 ("To be sure, Defendant presented a strong case for compassionate release on account of his incurable brain cancer even before the outbreak of the COVID-19

pandemic."). Further, Edwards had served half of his 36-month sentence. Id. at *4. As a result, while noting that defendants "have to meet a high bar to warrant compassionate release" under § 3582(c)(1)(A), the court found that extraordinary and compelling reasons existed justifying Edwards' release. Id. at *5, 6.

Here, the court finds that the COVID-19 pandemic does not, standing alone, create an extraordinary and compelling reason for compassionate release under § 3582(c)(1)(A). While the court is sympathetic to Arey's health situation and the threat posed by COVID-19, Arey has presented no evidence that the medical care he is receiving at the jail is inadequate.[9] Further, the BOP has taken significant steps to reduce the threat of COVID-19 for the inmate populations.[10] Accordingly, the court finds that Arey's sentence under the now reformed § 924(c) is sufficient to establish an extraordinary and compelling reason to reconsider Arey's sentence, notwithstanding the COVID-19 pandemic.

 iii. <u>A sentence reduction is appropriate after considering the § 3553(a) factors.</u>

Having found that extraordinary and compelling reasons exist to warrant a reduction in Arey's sentence, the court must consider if a reduction is consistent with the applicable § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A). Accordingly, the court should consider (1) Arey's

---

[9] In Arey's supplemental memorandum, he argues for the first time that he has experienced a two-week delay in getting his heart medication and that he has not been able to see a doctor to get a prescription renewed for his arthritis medication, ECF No. 229. The court finds that this does not rise to the level of an extraordinary and compelling reason warranting his release. See Beck, 425 F. Supp. 3d at 580-81 (finding that defendant's invasive breast cancer that spread to her lymph nodes due to the "grossly inadequate treatment" she received constituted an extraordinary and compelling reason).

[10] For example, the BOP has established a website that maintains up-to-date information on the impact of COVID-19 on the BOP's prisons. This includes implementing modified operations that limits inmate internal movement and visitors to the prisons, suspends all official staff travel, and screens inmates and staff for COVID-19. Further, each individual prison has established cleaning and disinfecting procedures. See Bureau of Prisons – COVID-19, https://www.bop.gov/coronavirus/ (last visited May 6, 2020).

13

personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. See Decator, 2020 WL 1676219, at *4; Redd, 2020 WL 1248493, at *8 (citing § 3553(a)(1)-(6)).

The court has considered the factors set out in 18 U.S.C. § 3553(a). First, the court takes note that Arey presents some health concerns, namely he suffers from atrial fibrillation, perpetual neuropathy, and degenerative joint disease in both knees, and is 61 years old. The court further notes that Arey has completed some educational and rehabilitation courses. Arey also has a non-violent criminal history and the charges against him, although serious, were not violent. Arey faces a guideline sentence of 210 – 262 months for the drug offenses and 180 months for the § 924(c) offenses.[11]

With respect to the need to avoid unwarranted sentencing disparities, Arey's sentence is grossly disparate to the reduced § 924(c) sentence received pursuant to the FSA by a defendant sentenced today. Further, as discussed above, many other defendants are receiving reduced sentences pursuant to the changes made by the First Step Act. See e.g., Redd, 2020 WL 1248493, at *10 (reducing an original sentence of 540 months to 243 months due to

---

[11] When the court reduced Arey's sentence in 2006 to 235 months for the drug offenses, it calculated Arey's criminal history category as a category III and sentenced him at the low end of the 235 – 293 months. See ECF No. 205. In his motion, Arey argues that his criminal history category should be a category II. The court agrees. The Fourth Circuit directs that "when 'imposing' a new sentence, a court does not simply adjust the statutory minimum; it must also recalculate the Guidelines range." Chambers, 2020 WL 1949249, at *4 (citing Gall v. United States, 552 U.S. 38, 49 (2007)). Accordingly, the court recalculates Arey's guideline range to be 210 – 262 months for the drug offenses and will resentence Arey to 210 months for the drug offenses, the low end of the guideline range.

changes to § 924(c)); Decator, 2020 WL 1676219, at *5 (reducing an original sentence of 633 months to time served of over 300 months due to changes to § 924(c)); Bryant, 2020 WL 2085471, at *5 (reducing an original sentence of 637 months to time served of over 300 months due to changes to § 924(c)); Urkevich, 2019 WL 6037391, at *4 (reducing a sentence for three "stacked" § 924(c) convictions to a total of 60 months, to run consecutively).

The court concludes that, in light of the changed circumstances explained above, a reduction in Arey's sentence is appropriate after considering the § 3553(a) factors. Accordingly, pursuant to § 3582(c)(1)(A), the court will reduce Arey's sentence to eliminate the "stacking" § 924(c) sentences, and re-sentence Arey to three 60-month terms, consecutive, for each § 924(c) count. Arey's term of imprisonment is therefore reduced to 390 months, representing 210 months for the drug offenses and 180 months, consecutive, for the § 924(c) counts.

### III.

For the reasons stated herein, the court **GRANTS in part** Arey's motion for compassionate release, ECF No. 208, and **MODIFIES** the terms of imprisonment on counts 5s and 6s in Case No. 5:05-cr-29 and count 1 in Case No. 5:05-cr-62, to 60 months each, consecutive, and the terms of imprisonment on counts 1s and 2s in Case No. 5:05-cr-29 to 210 months, concurrent, and **DENIES in part** Arey's motion as it pertains to his immediate release from custody. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: May 11, 2020

Michael F. Urbanski
Chief United States District Judge